IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CRUDEN BAY HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-01170-E |
| | § | |
| CAMERON R. JEZIERSKI AND | § | |
| JPMORGAN CHASE BANK N.A., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss (Doc. 7). After careful consideration of the motion, response, and reply, as well as the applicable law, the Court grants the motion to dismiss.

### PROCEDURAL AND FACTUAL BACKGROUND

Before taking up the merits of the Motion to Dismiss, the Court needs to address some preliminary jurisdictional issues resulting from the removal of this case from state court. *See Treaty Pines Invs. Partnership v. C.I.R.*, 967 F.2d 206, 210 (5th Cir. 1992) (court entitled to determine its own jurisdiction). Plaintiff Cruden Bay Holdings, LLC filed this action in state court in Dallas County, Texas on July 20, 2020, against Cameron R. Jezierski, asserting claims for fraud and conspiracy. Plaintiff added JPMorgan Chase Bank ("Chase") as a defendant in its First Amended Petition, but Chase was not served with that petition. Plaintiff filed a Second Amended Petition on April 19, 2021, and Chase was served. On April 28, 2021, the state court judge issued an order dismissing the case for want of prosecution. Plaintiff filed a timely Motion to Retain that

1

same day, asserting, among other things, that the answer date had not yet run for the new defendant Chase. *See* TEX. R. CIV. P. 165a (motion to reinstate shall be filed within 30 days after order of dismissal is signed). About three weeks later, on May 21, 2021, Chase filed its Notice of Removal on grounds of diversity jurisdiction. The state court judge had not yet ruled on the Motion to Retain. The Court reinstates the case. *See Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir. 1985) ("when a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court"); *see also* FED. R. CIV. P. 60(b); *Oviedo v. Hallbauer*, 655 F.3d 419, 423 (5th Cir. 2011) (case may not be removed to federal court after state court's jurisdiction has wholly expired).

Next, the Court needs to address the issue of improper joinder. Plaintiff sued Chase and Cameron Jezierski, who Plaintiff alleges was a principal player in a "*Ponzi-*style business enterprise." Jezierski tricked investors, including Plaintiff, into thinking they were providing funds to purchase consumer debt at a discount, when in reality, the funds were primarily used to support his "lavish lifestyle." As alleged by Plaintiff, Jezierski pleaded guilty to charges stemming from the scam and is a federal inmate. Plaintiff alleges Chase aided and abetted Jezierski's fraud and conspired with him to defraud Plaintiff. Plaintiff and Jezierski are both Texas citizens, but Chase asserts Jezierski was improperly joined and his citizenship should be disregarded.

A defendant is improperly joined if the moving party establishes that (1) the plaintiff has stated a claim against a diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff has not stated a claim against a defendant that he properly alleges is nondiverse. *See International Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016). Because Jezierski is in fact nondiverse, only the latter option is relevant here. As the

2

party attempting to remove this action, Chase has the burden of establishing that Plaintiff has failed to state a claim against Jezierski. *Id.* In doing so, it must demonstrate that there is no possibility of recovery by the plaintiff against a nondiverse defendant, which, stated differently, means that there is no reasonable basis for the court to predict that the plaintiff might be able to recover against a nondiverse defendant. *Id.* at 199–200. Applying the federal pleading standard, the court must consider whether Plaintiff pleaded enough facts to state a claim to relief against the nondiverse defendant that is plausible on its face. *Id.* at 208. Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

Chase argues Plaintiff has no possibility of obtaining relief against Jezierski in this action. Chase has provided documents from the record in a civil action in the United States District Court for the District of Maryland against Jezierski and others brought by the Securities and Exchange Commission. In 2018, before Plaintiff filed this action, the Maryland court issued an order staying any civil litigation against Jezierski and the scheme's assets and appointing a receiver. The receiver later established a claims procedure that, according to Chase, provides the exclusive way for Plaintiff to obtain relief from Jezierski. Plaintiff has not sought a remand or otherwise challenged Chase's improper joinder argument. Based on the rulings in the Maryland lawsuit, the Court finds that Jezierski has been improperly joined and his citizenship may be disregarded. The Court dismisses Plaintiff's claims against Jezierski without prejudice. *See Wright v. ANR Pipeline Co.*, 652 Fed. App'x 268, 271 (5th Cir. 2016) (where court determines defendant has been improperly joined and should be dismissed, that dismissal must be without prejudice).

The Court turns to Chase's Motion to Dismiss Plaintiff's claims against it. Plaintiff has asserted two claims against Chase, conspiracy and aiding and abetting Jezierski and others in a fraudulent scheme. The following allegations are taken from Plaintiff's Second Amended Petition. Plaintiff is in the business of managing investment funds. Jezierski and two others, Kevin Merrill and Jay Ledford, came up with a scheme to defraud potential investors. (In its pleading, Plaintiff sometimes refers to Jezierski, Merrill, and Ledford as the "fraudsters" or "scamsters.") Their pitch to the investors was that they would buy consumer debt from reputable companies using the investors' funds. They claimed they could buy the debt at a discount and then either collect on the debt or flip the portfolios for a large profit. In reality, Jezierski and the others were not in negotiations with real entities to purchase their debt. The fraudsters created entities with names mimicking those of real entities, then the fraudsters and Chase opened bank accounts in the fake entities' names, giving the illusion that funds were being sent to real entities. For example, Santander Consumer USA is a real entity that has a long and significant relationship with Chase. Santander Consumer USA is generally known as "SCUSA," and Chase is its bank. The fraudsters formed a new entity misleadingly named "SCUSA Financial" with the intent to defraud Plaintiff and others into believing the account belonged to the legitimate SCUSA entity. Jezierski opened a SCUSA Financial account at a Chase branch in North Richland Hills, Texas. Chase did nothing to verify the existence and legitimacy of SCUSA Financial or to inquire if it was related to the real SCUSA. Chase knew or had ample reason to know or suspect that the SCUSA Financial account was fraudulent. Plaintiff sent funds to the Chase account for SCUSA Financial. The fraudsters immediately wired those funds out to personal or other accounts they controlled. Plaintiff alleges Chase was required to conduct proper diligence before opening the accounts and monitor account

4

activity once opened and did none of that. For example, Chase accepted Jezierski as the sole signatory on the SCUSA Financial account on the basis of supposed website documentation that was deficient and would not have held up if Chase had done actual due diligence. The SCUSA Financial account and one opened less than a month later for NLEX Inc., were the primary vehicles by which Plaintiff was defrauded.

The scam was uncovered when the fraudsters could not make investor payments. By the time Plaintiff learned of the fraud, the vast majority of its investment had been spent funding the fraudsters' lavish lifestyles. Plaintiff invested approximately $30 million in the scam and lost more than $26 million of that amount.

In connection with its conspiracy claim, Plaintiff alleges that Jezierski, Merrill, and Ledford participated in a fraudulent and tortious scheme to defraud Plaintiff. Plaintiff alleges Chase joined Jezierski and the others in their fraudulent scheme and, upon information and belief, had a meeting of the minds with them on the fraudulent course of action. In furtherance of the fraud, Plaintiff alleges, Chase engaged in multiple overt, unlawful acts, including opening the fake SCUSA Financial and NLEX accounts that enabled the fraud, as well as processing wire transfers into and out of those accounts. In connection with its aiding and abetting claim, Plaintiff alleges Chase aided and abetted Jezierski and others in the fraudulent scheme with the intent to assist them in committing their fraudulent and tortious actions. Chase's aiding and abetting conduct was a substantial factor in causing Plaintiff to be defrauded.

Chase asserts Plaintiff's claims fail as a matter of law. Regarding the aiding and abetting claim, Chase argues Texas does not recognize aiding-and-abetting tort liability and even if such a claim is recognized, Plaintiff has not plausibly alleged the elements of such a claim. Regarding

the conspiracy claim, Chase contends Plaintiff has not plausibly alleged any conspiratorial agreement between Chase and the fraudsters. In addition, Chase contends the claims should be dismissed because they seek "an impermissible end-run around the Bank Secrecy Act (BSA) and related federal regulations."

## LEGAL STANDARD

Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6); *see* FED. R. CIV. P. 8(a)(2) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations omitted). The court's review is limited to the pleadings, including attachments to the complaint, attachments to the motion if they are referred to in the complaint and central to the plaintiff's claims, and "matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

6

Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project*, 920 F.3d at 899. On a motion to dismiss, the court determines only whether the plaintiff has stated a claim upon which relief can be granted; it does not consider whether a plaintiff is likely to prevail. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

A complaint alleging fraud also must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). FED. R. CIV. P. 9(b). A claim of conspiracy to defraud is subject to the heightened pleading standard of Rule 9(b). *See Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 961 (5th Cir. 1994). A party must state with particularity the circumstances constituting fraud. FED. R. CIV. P. 9(b). Generally, Rule 9(b)'s "particularity" standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they are fraudulent." *Plotkin v. IF Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Accordingly, a plaintiff must plead the "who, what, when, where, and how" of the fraud. *Benchmark Elecs., Inc.*, 343 F.3d at 724 (citation omitted). Knowledge and other conditions of a person's mind may be alleged generally. FED. R. CIV. P. 9(b).

### AIDING AND ABETTING CLAIM

Chase first asserts Plaintiff's aiding and abetting claim must be dismissed because no such claim is recognized under Texas law. In another case, the undersigned judge agreed with this argument and dismissed the plaintiff's aiding and abetting claim. *See United Healthcare Servs.,*

7

*Inc. v. Next Health, LLC*, No. 3:17-CV-00243-E-BT, 2021 WL 764035, at *7 (N.D. Tex. Feb. 26, 2021). An aiding and abetting claim requires a defendant, "with unlawful intent, to give substantial assistance and encouragement to a wrongdoer in a tortious act." *W. Fork Advisors, LLC v. SunGard Consulting Services, LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014, pet. denied) (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)). The Texas Supreme Court "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 782 (5th Cir. 2018) (quoting *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017)). Thus, recognition of the theory under Texas law "is an open question." *Juhl*, 936 S.W.2d at 643; *see also Fiamma Statler, LP v. Challis*, No. 02-18-00374, 2020 WL 6334470, at *10 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied). "When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by state courts." *DePuy*, 888 F.3d at 782.

Plaintiff counters that two years after *DuPuy* was decided, the Texas Supreme recognized a cause of action for aiding and abetting, citing *Nettles v. GTECH Corp.*, 606 S.W.3d 726 (Tex. 2020). Plaintiff quotes the following language from *Nettles*: "Aiding and abetting and conspiracy are theories of derivative or vicarious liability," and a plaintiff "can prevail on her conspiracy and aiding-and-abetting theories . . . by proving that the [principal fraudster's] actions . . . were fraudulent." *Id.* at 738–39. Plaintiff argues that because it has alleged underlying fraud and conspiracy claims, it has stated a cognizable claim for aiding and abetting.

The issue in *Nettles* was whether a Texas government agency's sovereign immunity from suit extended to its private contractor, GTECH. GTECH contracted with the Texas Lottery Commission ("TLC") for scratch-off ticket manufacturing and services. In separate lawsuits in

8

two different counties, plaintiffs sued GTECH for claims that included fraud, aiding and abetting the TLC's fraud, and conspiracy with the TLC. The plaintiffs maintained that a certain symbol on tickets for a particular game misled them into believing they would win. *Id.* at 730. GTECH argued the plaintiffs' claims were barred by derivative sovereign immunity because the suits involved conduct directed and controlled by the TLC, an entity with sovereign immunity. *Id*. The Texas Supreme Court held that GTECH was not entitled to sovereign immunity on the plaintiffs' fraud claims because GTECH had discretion regarding the conduct at issue—choosing the wording of the game instructions. *Id.* at 737. Then the Court turned to whether GTECH was entitled to sovereign immunity on the claims for aiding and abetting fraud and conspiracy. As pointed out by Plaintiff in this case, the Court noted that aiding and abetting and conspiracy are theories of derivative or vicarious liability. *Id.* at 738. They depend on liability for an underlying tort, and failure of the underlying claim necessarily disposes of these theories. *Id.* The Texas Supreme Court found that plaintiffs' claims for conspiracy and aiding and abetting were wholly derivative of an alleged underlying fraud by TLC alone. Unlike the fraud claims against GTECH previously discussed, these claims assumed TLC was alone responsible for the game instructions and committed fraud through those instructions. *Id.* at 738–39. The plaintiffs' aiding and abetting and conspiracy claims focused on GTECH's later printing and distributing of the tickets. *Id.* at 739. The plaintiffs could only prevail on the conspiracy and aiding and abetting theories against GTECH by proving that TLC's actions were fraudulent. Consequently, as to these two claims, the plaintiffs were entitled to derivative sovereign immunity. *Id.* at 739.

The *Nettles* case does not expressly recognize a cause of action for aiding and abetting, nor does it even discuss the fact that the issue of whether Texas recognizes a cause of action for aiding

and abetting was "an open question." The threshold issue was whether the defendant was entitled to immunity for such a claim. The Court concludes that Texas law on the issue of whether there is a cause of action for aiding and abetting has not changed since the Fifth Circuit's *DePuy* decision and the Texas Supreme Court has still not expressly recognized a cause of action for aiding and abetting.[1] Accordingly, the Court finds Plaintiff's claim for aiding and abetting should be dismissed.

## CONSPIRACY CLAIM

Chase also contends that Plaintiff's claim for conspiracy should be dismissed. Chase argues Plaintiff has not plausibly alleged the elements of such a claim. Civil conspiracy is a theory of vicarious liability and not an independent tort. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). It requires an underlying tort that has caused damages. *Id.* The elements of a civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.* (quoting *Massey v Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)); *see In re 3 Star Props., L.L.C.*, 6 F.4th 595, 609 (5th Cir. 2021). For the alleged conspirators to have a meeting of the minds, there must be an agreement among them and each must have a specific intent to commit the act. *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 91 (Tex. App.—San Antonio 2003, pet. denied). For specific intent to exist, the parties must be aware of the harm or the wrongful conduct at the beginning of the agreement and intend to cause that harm. *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *San

---

[1] The Court notes that the plaintiff's petition for review in the *Fiamma Statler* case out of the Second District Court of Appeals in Fort Worth asserted that the Texas Supreme Court should recognize a cause of action for aiding and abetting. The Texas Supreme Court denied review on June 18, 2021. *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *10 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied).

10

*Antonio Credit Union*, 115 S.W.3d at 91.  Chase contends Plaintiff fails to allege facts to show any agreement existed between Chase and Jezierski or to show Chase had the requisite knowledge and intent.

Plaintiff's live pleading alleges in the summary and factual background paragraphs that Jezierski's scam was made possible "only because Chase violated myriad of its own internal rules and regulations, as well as external banking laws and regulations, in opening and monitoring (*i.e.*, failing to monitor) the fraudulent accounts."  Plaintiff alleges "the lynchpin to the scam was [the scamsters] ability to open real *but misleadingly named, inadequately documented, and misused* bank accounts at Chase that mimicked accounts of the real entities with which the scamsters were supposedly doing business."  Plaintiff further alleges that "Chase does substantial business with the real SCUSA, so knew, or at least had ample reason to know or suspect, that the "SCUSA Financial" account was fraudulent."  Plaintiff alleges Chase must follow various banking rules which set out specific requirements to open an account, as well as suspicious accountholder behavior that often indicates fraud and should be investigated.  Plaintiff alleges Chase facilitated the fraudsters' transactions by (1) opening and hosting accounts for misleadingly-named entities without conducting any meaningful diligence or requiring any real documentation to verify the purpose or ownership of the entity or account, then (2) facilitating the immediate transfer of Plaintiff's funds to other accounts controlled by the fraudsters.  In the paragraphs specifically alleging conspiracy, Plaintiff alleges Chase "joined Jezierski, Merrill, Ledford, GCR, and DeVille [Merrill's and Ledford's entities] in their fraudulent scheme, and upon information and belief, had a meeting of the minds with them on that fraudulent course of action."  Plaintiff further alleges, Chase engaged in multiple overt, unlawful acts, "including opening fake 'SCUSA' and 'NLEX'

accounts that enabled the fraud and processing wire transfers into and out of those accounts that further facilitated the fraud."

Plaintiff responds that circumstantial evidence may prove the existence of a civil conspiracy and the determination of whether a conspiracy exists almost inevitably rests on the inference that may fairly be drawn from the behavior of the alleged conspirators. It contends it has sufficiently detailed how and why Chase knew about the fraudulent scheme, how Chase participated jointly in that scheme with its co-conspirators, how integral Chase's participation was, and the impact its participation had. Plaintiff asserts it has alleged ample facts upon which to infer that an agreement was reached between the fraudsters and some Chase employee(s).

Plaintiff alleges Chase joined Jezierski and others in a fraudulent scheme, and upon information and belief, had a meeting of the minds with them on that fraudulent course of action. This allegation is a conclusory recitation of the elements. The factual allegations Plaintiff does make about Chase involve Chase's failure to conduct meaningful diligence in connection with the fraudsters' opening of Chase accounts and transfers of newly-deposited money from those accounts. These allegations do not plausibly allege that Chase knew of the fraudsters' scheme and had a meeting of the minds to participate in it with them. The facts Plaintiff pleads do not permit the court to infer more than the mere possibility of misconduct by Chase. *See Iqbal*, 556 U.S. at 679. Plaintiff does not plead any factual or circumstantial evidence of a meeting of the minds between Chase and the fraudsters and has therefore failed to plausibly state a claim for conspiracy against Chase. The Court grants the motion to dismiss.

Chase makes another argument for dismissal. It contends that although Plaintiff has not asserted express claims under the Bank Secrecy Act or the USA Patriot Act, because Plaintiff

12

alleges Chase failed to comply with banking laws, its claims invoke those statutes and impermissibly seek to enforce them. Chase argues Plaintiff cannot use Chase's alleged failure to follow these Acts as a basis for liability. Plaintiff responds that its pleading does not reference these Acts, let alone bring a claim under them. Plaintiff also argues it does not allege Chase is liable to it for violating any federal statutes and instead referenced Chase's alleged disregard for the applicable banking laws as evidence of Chase's knowledge of and participation in the fraudulent conspiracy. At this stage of the proceedings, the Court is not convinced that Plaintiff is using the BSA or the USA Patriot Act as a basis for liability against Chase, especially since those Acts are not named in Plaintiff's pleading. The Court denies this basis for dismissal without prejudice to Chase's reasserting it if the case proceeds beyond the motion-to-dismiss stage.

Plaintiff has asked for leave to amend in the event the Court grants the motion to dismiss. A district court has discretion whether to dismiss a claim with or without prejudice, *see Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 215 n.34 (5th Cir. 2009), and the court may deny an opportunity to replead if an amendment of a claim is futile. *See Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). The Court finds that it would be futile to allow amendment of Plaintiff's aiding and abetting claim as such a claim is not recognized in Texas. That claim is dismissed with prejudice. The Court will permit Plaintiff to amend its claim for civil conspiracy. That claim is dismissed without prejudice and, if Plaintiff can in good faith replead facts to support its claim for conspiracy against Chase, it may do so on or before 28 days from the date of this Order. *See* Fed. R. Civ. P. 15(a)(2). If Plaintiff does not replead its conspiracy claim against Chase, the disposition of that claim will be converted into dismissal with prejudice.

**SO ORDERED**; signed February 14, 2022.

13

_____
Ada Brown
UNITED STATES DISTRICT JUDGE